Right, our third case this morning is number 21-11995 Sable Trail Transmission versus 18.27 Acres of Land. Mr. Harris. May it please the Court. My name is Bruce Harris and I represent Sable Trail Transmission. The district court erroneously adopted state substantive law to award attorney's fees and costs in this case. And there's two reasons this Court should reverse, a narrow reason and a broader one. The narrow reason is that Congress has preempted the award of attorney's fees and costs in all federal question cases. The Supreme Court recognizes... That's a narrow ruling in your opinion to say that Congress has preempted all of attorney's fee law in all federal question and you add in diversity cases too throughout the country. You may be right about it, but I don't think that's narrow. Well, I think it's narrow in that it goes right to the issue of what's on appeal here, which is that award of attorney's fees. Well, yeah, but that's a monumental holding. I mean, that's a pretty broad principle of law. But it's exactly... There's no case that has said that by the way, right? Well, the Supreme Court has said it multiple times, Your Honor. The Supreme Court said it in the... That there's complete and utter field preemption with regards to attorney's fees in all federal jurisdiction cases. Your Honor, that's what we believe the Alyeska decision stands for. Oh, stands for, but not held. Well, it held that and then Buchanan... What did Alyeska explicitly hold? Alyeska explicitly held that the private attorney general approach to awarding attorney's fees was not permitted because... Correct. So there's no inherent common law mechanism for a federal court to award attorney's fees absent a statute, a rule, or a contractual provision, right? That's right, Your Honor. Here you've got a constitutional state provision. As interpreted by the Florida courts, it says you award attorney's fees and costs as part of full compensation. So Alyeska, I mean, you'd have to get a really broad reading of Alyeska to say that that case stands for the the field of attorney's fees throughout the United States in all federal jurisdiction cases, both diversity and federal question. Well, Your Honor, we believe that's the way Buchanan, the Supreme Court following Alyeska, interpreted it. And that's the way it's been... That's the way attorney's fees have been addressed. Absent, as you said, a contract or a explicit congressional statute, there's no award for attorney's fees in a federal question case. But that doesn't speak to field preemption. That speaks to a rule of substantive law as to when you can award attorney's fees, right? There's a big difference between the two. One of them says, no, but if you're right that Congress has preempted the field of attorney's fees, right? Well, and my argument was in federal question cases, not in diversity cases. Your brief doesn't stop there, though. Your brief says diversity cases, too. With respect to costs, Your Honor, not with respect to attorney's fees. Same thing. Well, costs is a little bit different because there the Congress has an explicit statute that limits the award of expert witness costs in particular. So the field preemption applies to the attorney's fees, but that field preemption is in federal subject matter jurisdiction cases, not diversity cases. And if we misstated that in our brief, that was an error. That was not the intent. It was only with respect to subject matter jurisdiction that we believe the field preemption exists and... Let's talk about the other issue, I guess, which you believe is the broader claim that Georgia power does not require us to affirm. Tell us why you think that's so. Well, the question in Georgia power was not what constitutional standard applies, number one. That was not the issue in Georgia power. It's what substantive law was going to be used to measure the just compensation. The statute here, the question here is not what constitutional provision applies either. It's just whether state law governs or federal law governs. But the only basis that the appellees have for an award of attorney's fees is based on Florida's full compensation constitutional standard. You think that you think the result would be different if there was a Florida statute on point as opposed to the Florida Constitution? No, but I think that the... The difference is that the Constitution is the basis for the statute. The Constitution is the standard that the defendants rely upon in making an award for attorney's fees, and it's what the district court based its decision on, is that Florida's full compensation standard applies over the federal just compensation standard, and that can't be. But it doesn't matter where the state standard comes from. Your position would have to be the same. If there was no Florida constitutional provision on point, if there was no Florida statute on point, and Florida had developed a common law standard over the decades, over the years, saying that you get attorney's fees and costs as part of full compensation in M&A domain proceedings, your argument would still be the same, would it not? Well, it would be, but the reason is, is that the federal Constitution has given the clear rule of decision. So there is... I'm sorry, counsel. If we look back at Georgia power, which seems to be a pretty closely analogous statute, we said, en banc no less, that we have to start under the rules of decision act with a presumption that state law will supply the gaps missing, right? Isn't that what we said? And then, only if that presumption is rebutted, do we go to federal law. And so it seems to me that you have to explain to us why, in this case, with a substantially similar statute to the one that was at issue in Georgia power, the federal considerations that are spelled out rebut that presumption when they did not do so in Georgia power. And your answer... Disagree with that? I disagree in that there's no choice of law to be made because the rules of the decision act says that only in the absence of a constitutional or a federal statute or a rule do we look to state law. And here we have... So the problem is that the Natural Gas Act, which is what we're operating under, that does not specify whether federal or state compensation will be awarded. Does it? Where does it specify that? It does not specify. Okay, so that is one of the gaps that must be filled when we are trying to interpret and construe and apply that statute, isn't that the case? It may be, but there is no gap with respect to what standard applies when the federal power of eminent domain is exercised. That's just wrong. By the way, let me just say that I'm sympathetic to your ultimate position because if I were writing on a blank slate, I would agree with the dissent in Chigaris and I would agree with the dissent in Georgia Power. But I'm not writing on a blank slate. And I don't see how you can say that there's no choice of... You're asking us to apply federal law, are you not? We're asking to apply the federal standard of compensation. That's a choice issue. Is it not? Well, no, it's a supremacy question, Your Honor. Whatever you call it, you're choosing between state law and federal law, right? You're saying that the reason you have to go federal is supremacy clause. That gives you the rationale for the choice. But there's a choice. I don't think there's a choice when the federal power of eminent domain is exercised, Your Honor. But Georgia Power involved the power of federal eminent domain used by a private entity, did it not? It did, but it didn't involve the standard of compensation, Your Honor. What do you think Georgia Power involved? It involved some federal common law that allowed to measure compensation in a way that the property owner would have received zero compensation if federal law was applied. It doesn't matter. It's a choice between... Georgia Power could have chosen a federal standard for compensation, could it not have, just as the dissenters wanted, right? If it had chosen the just compensation, and we believe that Georgia Power did. It correctly chose the federal just compensation standard. That's the standard. Wait, wait, wait, wait, wait, wait, wait, wait. You're telling us that Georgia Power chose the federal compensation standard. We think that's the best reading of Georgia Power, Your Honor, because... Here's the quote, okay? I mean, I really don't understand how you get there. I understand your other arguments, but this is Georgia Power. This is a quote from the end of the opinion where they're summarizing. Absent a showing of legislative intent to the contrary, the law of the state where the condemned property is located is to be adopted as the appropriate federal rule for determining the measure of compensation. And, Your Honor, I realize it's semantics, but there is a difference between how you measure compensation and what standard you start with. And what standard was just compensation under the Fifth Amendment? It had to be because it was only the federal power that was exercised. The only time a state standard comes into play is when the state power is exercised. So, in that situation, it was the federal just compensation standard, and then Georgia law was adopted to measure it. And, by the way, Your Honor, that... Yes, the question of what law applies is a federal question. That's undoubted. That's right. So, the federal court, as Judge Rosenbaum suggested, is filling an interstitial gap. And in filling that interstitial gap, the federal court is deciding a federal question. And the federal question is, what law applies? Do we apply federal law or do we apply state law for a federal issue? But Georgia power chose to apply state law as the federal rule. Of how... It's just... What's that? Of how to measure the just compensation standard. Yeah, and that's exactly what's at issue here. No, what's at issue here, Your Honor, is whether the full compensation standard supplants the No, it does not. If the issue here were how Florida law defines just compensation outside of attorney's fees and costs, would you lose? So let's say that Florida... I'm going to give you a hypothetical. These are made up things, okay? Sure. So, you don't need to correct me on being wrong on the substantive law. Yes, sir. It's just an example to try to get an answer from you. Federal law on just compensation says, and again, I'm making this up, you use current market value at the time of the condemnation. That's the standard, okay? State law says you measure just compensation based on best and most profitable use in the future, okay? Again, if those were the standards you're dealing with in this case, what does Georgia Power tell us to apply? What Georgia Power would say, apply the Florida substantive law, but not as the standard of compensation. As what? As the measurement of compensation. That's the same thing. But it's not when it comes to attorney's fees, and that's where the critical change is, is that just compensation under the Fifth Amendment does not include attorney's fees. But it does under Florida law. Under Florida law, full, and that's, under Florida law, just compensation also does not include attorney's fees. Anytime a Florida court would have an opportunity to interpret the Fifth Amendment's just compensation standard, it would be bound by Dohany and Bodcow to say, just compensation does not include attorney's fees and costs, absolutely. If it was interpreting Florida's full compensation standard, it would clearly find that attorney's fees and costs are awardable. And that's why the initial question is what standard applies, and that standard is just Go ahead, go ahead. If I understand what you're saying, you're telling us that the entitlement to attorney's fees is different than how you measure attorney's fees, and that Georgia Power only addresses how you measure. Is that correct or not? You're correct, Your Honor, that Georgia Power only talks to how you measure the compensation. That's right. And Georgia Power says apply the law of the state to measure the just compensation. But Georgia Power did not involve an award of attorney's fees or expert witness fees as this case squarely does. It's the only issue on appeal is whether or not the just compensation standard allows for the award of attorney's fees and costs, and it does not. Is there a concept under Florida law for just compensation? There is not, Your Honor. Just compensation. So even though it's entitled full compensation, why wouldn't it be fair to say that that is Florida's version of just compensation? Because if a Florida court or any court were applying Florida law, it would be bound to look to the federal constitution, the federal Supreme Court, the United States Supreme Court's interpretation of the Fifth Amendment. And the United States Supreme Court's decision that the Fifth Amendment does not include attorney's fees and costs applies. I'm sorry. If the state were taking property, wouldn't it have to look at its definition of what compensation would be? It absolutely would. And that would be full compensation, would it not? It would, under the state constitution. And because the state constitution applies. And because there's no, that's the only concept of compensation in eminent domain cases in Florida, is that right? When the state power is exercised, it is. When the federal power is exercised in Florida, all courts recognize that just compensation is owed, except for this decision. Anytime that a federal condemnation occurs in Florida, just compensation is the standard. Not Florida's full compensation standard. And that's why the initial question about what standard applies is so important. Can those state, those Florida decisions apply Georgia power? The one decision is the one on appeal and the second opinion out of the middle district that's also on appeal. Yes, Judge Walker's decision on appeal here applies Georgia power to find that the Florida standard of compensation applies to the federal power of eminent domain, which is an error. The standard must be the Fifth Amendment's just compensation standard. Okay, Mr. Harris, we've taken you way over your time, but you've saved your five minutes for rebuttal. Thank you, Your Honor. Mr. Hearn. Thank you. Good morning, Your Honors. I'm Thor Hearn, and I am here with my co-counsel, Mr. Brigham, on behalf of the Thomas family. I begin where Judge Rosenbaum made her initial question, and that really is the premise that is stated in Georgia power. And I do quote because I think it is very helpful. We begin with the premise that state law should supply the federal rule of decision unless there is an expression of legislative intent to the contrary, or failing that, a showing that the state law conflicts significantly with any federal interests or policies. Counsel, I'm sorry to interrupt, but I just want to make sure I get your response to your friend's argument. He's arguing that we don't even get to Georgia power because there's a clear standard under federal law, and it is just compensation. And there is no corresponding standard under Florida law that whenever federal law is involved and a federal taking is involved, that Florida courts apply the federal standard of just compensation and not the Florida standard of full compensation. And so we don't even get to the Georgia power decision. I'd just like to hear your response to that. My response to that really is picking up on that quote that I just made is that the premise before we go into this, the premise that underlies this, and this goes to the Supreme Court cases with Kimball Foods particularly, but also with Wallace and the petroleum case, that we have this presumption under federalism that the state law defines substantive rights, which includes the right of property and defines the nature and extent of a property interest. So in Florida, you can't begin without looking at what does Florida define to be the Thomas family's property interest, and that property interest includes the right to attorney's fees as part of the sticks in a bundle when their property is taken by condemnation. So Florida's constitution, and that's a significant policy statement that the people of Florida have made, because it's not just a rule of decision that is basically Florida common law. It's in their constitution and it's in their statutes. Let me give you what I think is a tough hypothetical for you, but maybe you'll be able to distinguish it. I will do my best. Florida decides, in its wisdom, that when any government decides to take property for eminent domain, whether it's permanent or an easement or something like that, not only do you get just compensation, as that term is commonly understood, you get attorney's fees and costs, and you get a brand new car. If the- So, federal court has a case under the Gas Act, and the question is, do you get the car? If the Florida has defined a property interest of an owner, that's where we first start, is to- No, Florida says, listen, just because you're going through the hassle of having your property taken in whole or in part, we think you should get a new car. And so the constitution enshrines just compensation, attorney's fees and costs, and a brand new car. And the question is, in a eminent domain proceeding brought by a private party, do you get the new car? I think owners would enjoy that, but I think that we, again, as a matter of law, and in answer to your hypothetical, go back to the question of how does Florida define property. If they define property as including a car, if that is the state definition of property interest, then that is the definition of what the Florida property owner's property interest is. So, in for a penny, in for a pound, right? Under Georgia power, federal courts apply that wholesale. It does, and I'll explain why, and I think it's some Supreme Court precedent. In per se, what both Justice Brennan and then later Justice O'Connor and a concurrence explained is we don't have federal property law that's being defined. The owner's interest in property is defined by state law. And then she cited Webbs v. Fabulous Pharmacy and Monsanto v. the EPA and the commissioner of the EPA at the time. What those cases said in the Missouri Monsanto case, particularly because in Missouri they had adopted the restatement definition of intellectual property and a trade property. And so the Supreme Court said, we're going to go look at Missouri, looking at what their definition of this property interest, and they followed that because they said, we, the federal government, don't define the property interest. And so in the Monsanto case, that shows that they did incorporate however the state had defended it. And there are differences between, and Ruckelshaus was the name I was missing, Monsanto v. Ruckelshaus, they were other states who defined it differently, the property interest. But the Supreme Court said a fundamental principle as property law is that we define the property by looking at what the state law defines it. So in your hypothetical, if the state, silly as it might be, to say, here's the compensation that you have or the bundle of rights you have by being a property owner in this state, this is what your property is, the federal courts defer to that state definition of property. But in a normal case, not governed by any of these acts where government eminent domain authority is delegated or given to a private party, federal courts apply federal common law to figure out what just compensation is, do they not? I'm trying to think of a case, you know, there are certainly... The government decides, the federal government decides, we want that building right next door. Right. And we need it for whatever reason, assume it's a proper governmental purpose or whatever, and they condemn it and they take it, that property owner is going to go to a federal court and that federal court is going to apply a federal common law standard to figure out what just compensation is, right? Even though the property rights are defined by Georgia law. And the answer to that question is because it's a very different situation than we confront here. No, I know it is. That's the federal government itself acting. So in that sense, it's not bound by the state rules, but it is, it can't pay less than just compensation as guaranteed by the United States Constitution. But the federal government is the condemner. That's not what's happening here with a private party and all the courts have made that distinction, Tennessee gas and Columbia gas. I know, I frankly don't see the distinction. Between the federal government being the condemner and the, to make sure I understand your question, the distinction that I'm speaking of is the difference between the federal government as the condemn or as the private party. I know, and a private party. Correct. Yeah. For purposes of figuring out the right standard, I don't see the difference. The government's delegating its eminent domain authority to a private party and the private party is essentially applying the force of federal law to condemn property. I don't see why you should have different standards. And I'm not speaking about Georgia power. I know we're bound by Georgia power, whatever it means. Right. But I don't see why the standard needs to be different if the federal government is a condemn or, or if the federal government is delegating its eminent domain authority to a private party. In both cases, federal law is being used to condemn private property. And I would note these distinctions in the answer to your question. First, when the federal government condemns property, it's paying taxpayer money for it. The federal government's taking ownership of it and the federal government has interests and accountability through the political process that's different. When a private company comes in, they do not have those same considerations. They're not paying taxpayer money for the property. They do not, are not accountable to the taxpayers, they're accountable to shareholders. So they're a different situation. It's not the same. And they're in for profit, right? And they are in for profit, which is fine, but they're in for a different reason. They're not, the federal government has said, it's a good idea for us to have pipelines running interstate. So we're going to give you private for-profit pipeline companies a limited power of eminent domain from the federal government for a limited purpose. They can't condemn it for a railroad, they can condemn it only for a pipeline, they have to be a licensee of FERC in order to exercise that power. But it is still for a private entity achieving profit by use of the federal eminent domain authority. And so in that sense, I see such a difference between a private pipeline company condemning power even as a licensee of the federal government and the federal government itself acting. So certainly the Supreme Court has spoken on a federal government standard, but there's no decision I know of that says that the private delegee or licensee of the federal eminent domain power is to be treated the same as the sovereign United States of America. And in fact, certainly Georgia Power and Tennessee Gas and Columbia Gas have all confronted that argument and they've all said, just because you're a licensee of a federal eminent domain power for a limited purpose does not enclose you with the same powers and privileges and sovereignty that the federal government has. Can I ask you a separate question? If under Georgia Power, the state substantive law for compensation, however defined, gives you a number that is lower than the federal standard, what do you do as a court? Well, I think the state, for example, if I can elaborate on your hypothetical, say Florida adopted a rule that said any condemnation, you'll get paid a full value but never more than a million dollars, something of that sort. And the property was shown to be worth a million five, say under even the just compensation standard. They would still have to have a million five paid because, as I said, the federal Fifth Amendment just compensation clause provides a floor for compensation that satisfies the U.S. Constitution. So you apply state law under Georgia Power as long as it doesn't go below that federal floor? That would be correct. And states can, again, I go back to when we look at the clause, it's not just two words just compensation that appear in the fifth clause of the Fifth Amendment. It's nor shall private property be taken for a public purpose without just compensation. The key word there is private property. The Constitution doesn't define private property. So what is the Thomas family's private property? We look to Florida law. That defines the property interest. So the federal government in power looks to the state law, which it brings into the equation as the federal rule of decision to define the property interest. And as I mentioned, the Ruckelshaus case, in that case, it was trying to define what intellectual property existed, even though it was a very elaborate federal scheme, excuse me, very elaborate federal scheme. They still said the property interest Monsanto has is going to be defined by Missouri state property law. And so we're going to look to that even in the context of a federally administered scheme to regulate and take property. If you have no further questions on that point, Your Honor, in Kimball Foods, they gave a three-point analysis, Supreme Court provided, and very basically, that is, number one, there must be an express, again, this is to get outside the presumption that state law is governing standard for the compensation, that number one, there must be an express statement of intent that federal common law was intended by Congress to displace state law. And that would be specific to the legislation. So we would look at the Natural Gas Act, and we'd say, what do we find in the Natural Gas Act that says Congress intended to displace Florida law? The answer is nothing. Not only that, some of the provisions very expressly embrace Florida law. They give the pipeline company the ability to go into Florida state court. The earlier version of it had a provision that said the condemnation should be as close as equivalent to the state condemnation process as well. Those provisions deal with procedure more than substance, right? They do, but it certainly is not an express statement that Congress intended to displace Florida law. And in fact, it shows some accommodation of Florida state law. The second provision from Kimball is that the nature, if there's not an express statement, or even if there is, of Congress's intent to displace Florida law, then the question becomes what is the nature of the United States, not the nature of the pipeline company or the delegee of the United States power, but what is the interest of the United States in displacing state law? And how significant is that? They specifically direct the court to inquire whether the state law would frustrate or nullify is the term I believe Columbia Gas used, would nullify the federal government's interest. In this case, I don't know what interest the federal government or Congress has in having pipeline companies not reimburse owner's attorney's fees. That how does that serve any federal congressional interest? I don't see the answer to that question. Excuse me. And again, I come back to the point that we look to Florida law, Florida's constitution, statutes, and common law to define the property interest for which the owners are entitled to compensation. And that includes within that bundle of rights, the bundle of sticks, the right to attorney's fees when their property is condemned. Thank you, Your Honors. Okay. Thank you very much. Counsel, before you start, I want to ask you a question. Yes, Your Honor. So obviously we haven't made any decisions and this is just a hypothetical, but let's assume for purposes of this hypothetical that we, we conclude that the measure of compensation that the NGA requires is whatever, whatever the property, whatever the state, well, let me put it this way, whatever would be considered to be just compensation without respect to whatever it might be called by the state. Okay. And so we get to the second inquiry under Georgia Power. So my question is, I'm just, I want you to assume that we're going to get to the second inquiry under Georgia Power. What is your position with respect to whether this case is distinguishable on federal interests from Georgia Power and why? This case is distinguishable from Georgia Power and the reason is it's a completely different statute. The thing that these statutes share is the delegation of the power of eminent domain. They're almost identical between the Federal Power Act and the Natural Gas Act. But so if you were going to apply to Kimball Foods factors, for example? Well, with respect to the Kimball Food factors, it's important that my friend's argument was that Congress must show a clear intent to, that federal common law should displace state law. And we're not talking about federal common law displacing state law in this case. What we're talking about is whether or not the federal constitution. Okay, but you're back on the first question. I understand. I want you to address the second question. I'll address the second question. And the reason is that what the Federal Power Act that was at issue in Georgia Power and the Natural Gas Act share is a similar delegation of the federal power of eminent domain. They're both a very similar delegation. But what those acts are intending to do, what Congress intended under the Federal Power Act, was to take away a hurdle with respect to creating hydroelectric dams within states and within states that sometimes cross state lines. But the Georgia Power case dealt with a dam in Georgia by a Georgia power company, and the power was generated for Georgia citizens. And the purpose of the Federal Power Act there was to take away the navigational servitude issues that might come into play with respect to the river that was being dammed, wholly within one state. In fact, it's true it was within one state, but the court recognized that it could be within different states, and it also recognized that you could have different standards for compensation in the different states for this same project, and it didn't have any problem with that. So, I'm not sure that gets you there. I wonder if there's anything else you have. There is, Your Honor. The Natural Gas Act, on the other hand, was not intended to take away hurdles with respect to local projects. It is by its very basis for transporting natural gas from states that have it to states that need it across states that are in between. And in fact, the Natural Gas Act was amended to, when the Federal Power of Eminent Domain was delegated to natural gas companies based on an amendment, it was to get over hurdles that states were putting in the way of natural gas projects. State constitutions were saying, well, you can't condemn here because you're not delivering gas here, for instance. And to overcome those problems, the Congress amended the Natural Gas Act to include the So, the Natural Gas Act is designed on its face for interstate projects. In fact, to go back to the Federal Power Act, in that act, if the project is deemed to have federal implications, non-local, then the United States steps in and takes control of it itself. It's only for projects that are local in nature. But doesn't that mean, I mean, in some ways it seems like that makes it even more, under the reasoning of Georgia Power, that makes the NGA even more likely to require state law to fill the gaps. I mean, if the federal government isn't coming in at all to handle any of the natural gas lines, as opposed to in the Georgia Power case, where the federal government could have come in or it could have asked private companies to conduct the project, it seems like the federal government has more of a federal interest. Well, the federal interest in the Natural Gas Act is in the gas getting transported. And that the federal government chose to do it only through natural gas companies under the act doesn't lessen the federal interest in the gas being transported. But under the Federal Power Act, I mean, there's a natural, I mean, there's a same or similar, at least analogous federal interest in having power available to, in some cases, people across state lines from a single project. I mean, I'm not sure, I guess I'm not seeing the fine distinction that you're making and why it matters. Well, I think that the distinction is that in the Georgia Power case, it was not across state lines. It was entirely local. That's true. It wasn't in Georgia Power, but the court addressed that fact and didn't seem to think that that was an issue. And I understand that the court did that. But the point that I was trying to make is that if the project was of such a interstate interest, it was a national interest, then the federal government could have stepped in and taken the project itself. And what that implies is that the project in Georgia Power was a local project. It had to be, because otherwise the United States would have stepped in and proceeded with the project itself. This court has recognized that there is no choice of law when a rule of decision conflicts with the Georgia Constitution. In the transcontinental gas case, there was a conflict between a federal rule of civil procedure and the Georgia Constitution, and this court chose the federal rule of civil procedure because there was no choice to be made. There is no such rule here. Not after Georgia Power. It's not a rule, Your Honor. It's a constitutional standard. I know, and Georgia Power had that before it, too, and yet chose to go the other way. It chose to use Georgia's substantive law. As opposed to the federal Constitution. No, Your Honor, as a way to measure the standard under the federal Constitution. It was measuring that standard, and that was permissible. But, counsel, and I'm sorry, it can't be that the meaning of what compensation is due under this, if we're applying the federal standard, which of course we are, depends on the phraseology that the state uses to define its version of just compensation. Can it? In this specific question, it must, because the standard is just compensation, and the Supreme Court has said what just compensation does not include. It does not include attorney's fees and costs, and that's the only issue here. So under Georgia Power, we only apply state law if state law is the same as the federal Constitution. If that's the case, then there's no choice of law issue. It's all a phantom issue. Not the federal Constitution, Your Honor, Supreme Court decisions interpreting the federal Constitution. Same thing. It's federal common law interpreting a provision which needs gaps that are filled. If there was a question where, say, Florida common law and federal common law were not copacetic, and that federal common law was not a Supreme Court decision interpreting the federal Constitution, then theoretically Florida substantive law could be applied. But that's not the case here. There is a two Supreme Court decisions that interpret just compensation. Let me put a finer point on it. Let's say that the Florida Constitution used the term just compensation instead of full compensation, but otherwise its law was precisely the same as it currently is. Then would we apply the Florida version of just compensation under your theory, or would we still apply the federal version of just compensation? It would be the federal standard of just compensation. The words are the same, but then on how you measure it, the question would be, is there a Supreme Court decision that interprets this federal standard of compensation? If so, that would control, and that would be Florida substantive law. Florida substantive law is not just what it decides. It is what the United States Supreme Court decides when interpreting the federal Constitution. But it can be more than that. It can be more generous. It can be. It can be. It can include a car, if that's what the Florida Constitution standard wants to be. But if there is a United States Supreme Court decision that says just compensation does not include cars, doesn't include an extra car, then when a natural gas company exercises the federal power of eminent domain in Florida, courts are bound by that Supreme Court decision saying you don't get the car. Even if Florida Supreme Court and Florida state courts say you get the car, the word just or full compensation wouldn't matter. I just don't understand why you would go through the whole Georgia power exercise if the answer, as you say at the end of the day, is that you apply state law only if state law matches up with federal law. If that's the case, there's no choice of law issue to make. They're all one and the same. Right, Your Honor. And it's not federal law. It's the Supreme Court. There's a distinction for Supreme Court rulings. When the Supreme Court interprets the Constitution, Mr. Harris, what is it creating? It is creating federal law. Is it not? It is federal law. You're right, Your Honor. It has to be. It is. But it's also state law because states are bound. No, no. It provides a minimum floor. But states are always, as far as I know, always allowed to enhance constitutional provisions that go above the constitutional floor. That's never been in doubt, right? They're interpreting their own Constitution. When they're interpreting the federal Constitution, which they have occasion to do from time to what the United States Supreme Court has said. I agree with that. I agree with that. Okay. Thank you very much, Mr. Harris. We appreciate it, Mr. Hearn. Thank you very much as well.